## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| COMPETITIVE ENTERPRISE INSTITUTE | ) | |
| 1899 L Street, N.W., 12th Floor | ) | |
| Washington, D.C. 20036 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 12-1838 (RMC) |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| THE TREASURY | ) | |
| 1500 Pennsylvania Avenue, NW | ) | |
| Washington, D.C. 20220 | ) | |
| | ) | |
| Defendant. | ) | |

## AMENDED COMPLAINT FOR DECLARATORY RELIEF AND RELIEF IN THE FORM OF MANDAMUS

Plaintiff COMPETITIVE ENTERPRISE INSTITUTE ("CEI") for its complaint against

Defendant UNITED STATES DEPARTMENT OF THE TREASURY ("Treasury" or

"the Department"), alleges as follows:

1) This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to

   compel production under two requests for certain described records, which use the

   word "carbon," dated during 2012, from two Treasury Department offices.

2) CEI sent these FOIA requests by facsimile on August 8, 2012.

3) Treasury did not substantively respond to CEI's request for records or for a fee

   waiver within twenty working days, or thirty days after taking a ten-day extension, as

   required under FOIA by either producing responsive records or demonstrating an

   intention to comply with the request.

4)  The Treasury Department is an agency subject to FOIA and is accountable to the taxpayers and to the public.

5)  The records relate to agency performance of official functions.

6)  Transparency in government service is a legal requirement that has become the subject of great public interest and expectation, and specific and high-profile promises from the president and attorney general of the United States.

7)  The records at issue in this matter are of significant and immediate public interest for reasons including increasing media reports indicating that a "carbon tax" is being developed for adoption in the post-election "lame duck" session of Congress and, if that fails, next year, as a major new source of revenue for the federal government.

8)  Defendant has also failed to respond to CEI's administrative appeal of Treasury's failure to produce responsive records and refuses to satisfy its FOIA obligations.

## PARTIES

9)  Plaintiff CEI is a public policy research and educational institute in Washington, D.C., dedicated to advancing responsible regulation and in particular economically sustainable energy and environmental policy. CEI's programs include research and publication, as well as a transparency initiative seeking public records relating to energy and environmental policy and how policymakers use public resources.

10)  Defendant Treasury is a federal agency, headquartered in Washington, DC.

## JURISDICTION AND VENUE

11)  This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) because this action is brought in the District of Columbia and 28 U.S.C. § 1331 because the resolution of disputes under FOIA presents a federal question.

12) Venue is proper in this Court under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)

for each of the following three reasons : (1) because Plaintiff resides in the District of

Columbia (which is sufficient where defendant is an agency of the United States), (2)

defendant resides here, and (3) the events giving rise to this lawsuit arose here, too.

## **FACTUAL BACKGROUND**

13) This lawsuit seeks to compel Treasury to respond fully and completely to two FOIA

requests dated August 7, 2012 and sent by facsimile on August 8, 2012. The requests

seek described records dated in 2012 sent to or from or held by two specific offices

within the Treasury Department.

14) By one letter dated August 2, 2012, or five days before CEI sent its requests to

Defendant, Treasury acknowledged these requests and took an extension of ten days

to respond, on the basis of "unusual circumstances [that] exist regarding a search and

review for the information requested due to the timeframe of the records requested

which may potentially result in voluminous records". This misdating contributed to

CEI not correlating receipt of the request with the requests dated August 7, 2012, and

CEI initially filed suit in September for failure to respond. CEI dismissed that

complaint without prejudice awaiting Treasury's production or otherwise its response

to the administrative appeal.

15) Treasury further confused matters when assigning identification numbers to these

requests (2012-08-053 and 2012-08-054) by doing so without identifying which

number corresponds to which request, in addition to dating the acknowledgement

letter five days before the particular requests to which the letter apparently responds.

16) With the extension of time, Treasury's response was due September 20, 2012.

17) On September 25, 2012, CEI administratively appealed Treasury's failure to substantively respond to CEI's requests, and to respond to its requests for fee waiver.[1]

18) Treasury has since denied CEI's requests to have its fees waived or substantially reduced despite being barred under FOIA from assessing fees after failing to substantively respond by the statutory deadline.

19) Treasury has also declared that CEI must pay for photocopying electronic mail that it specifically requested be provided in electronic format, requiring no photocopying.

20) To date, Treasury has not provided any responsive records.

21) CEI is entitled to the requested information, to have its fees waived, and to judicial review of Treasury's refusals to provide the information.

22) By Treasury's failure to respond to CEI's appeal for failure to respond, CEI has exhausted its administrative remedies and has the right to seek judicial remedy.

*Oglesby v. Department of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

### Plaintiff's FOIA Request Seeking Certain Records of the Office of the Deputy Secretary

23) On August 8, 2012, CEI sent a request for records by facsimile to Treasury at 202.622.3895, seeking:

> copies of any and all record(s), correspondence, memoranda, analysis, email or other **records using the word "carbon"** which were produced, sent or received by the **Office of the Deputy Secretary for Environment and Energy** during

---

[1] By regular-mail letter dated September 26, 2012 and postmarked September 27, 2012, Treasury denied Plaintiff's requests to have its fees substantially reduced or waived as provided under FOIA when disclosure of information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government. Plaintiff appealed this fee waiver denial, which appeal remains outstanding, also reminding Defendant by letter dated November 5, 2012 that under the OPEN Government Act of 2007 (or "Openness Promotes Effectiveness in our National Government Act of 2007", P.L. 110-175) which amended FOIA, agencies that do not respond to requests within the statutory time period are precluded from charging search fees (or copying fees for media requesters, who are not subject to search fees). *See infra.*

2012**, from January 1, 2012 until the date you process this Request**.
(emphases in original)

### Plaintiff's FOIA Request Seeking Certain Records of the
### Office of Legislative Affairs

24) On August 8, 2012, CEI sent a request for records by facsimile to Treasury at

202.622.3895, seeking:

> copies of any and all record(s), correspondence, memoranda, analysis, email or
> other **records using the word "carbon"** which were produced, sent or received
> by the **Office of Legislative Affairs** during 2012**, from January 1, 2012 until
> the date you process this Request**. (emphases in original)

25) In both requests CEI stated "This Request contemplates copies of documents, in

electronic format if you possess them as such, otherwise photocopies are acceptable."

26) In both requests, CEI noted that "it is important for information relating to

deliberations, or deliberations with others inside government and without, over the

prospect of a carbon tax or other effort to regulate carbon dioxide, to be made

available to the public", and "There has been great public interest, both in the past

month and during previous discussions of Btu taxes, cap-and-trade and similar energy

tax policies which are the core of this FOIA Request, to judge by internet and media

attention, and thereby the request for fee waiver."

### Defendant's Response to Plaintiff's FOIA Requests

27) By a letter which Treasury dated August 2, 2012, six days before CEI's requests were

sent to or received by Treasury, Defendant acknowledged these two requests and took

an extension of ten days to respond on the basis of "unusual circumstances [that] exist

regarding a search and review for the information requested due to the timeframe of the records requested which may potentially result in voluminous records."[2]

28) On September 25, 2012, having received no substantive response from Defendant, CEI administratively appealed Treasury's failure both to substantively respond to the request for records or to the request for fee waiver, ending relevant time periods associated with the original request and initiating the administrative appeal phase.

29) Treasury failed to respond to that appeal for failure to produce.

30) Thirty-nine working days after CEI's original request but, importantly, after receiving CEI's administrative appeal, by letter September 26, 2012 and postmarked September 27, 2012, Treasury denied CEI's request to have its fees substantially reduced or waived, although it had waived its ability to assess fees by failing to respond substantively within 20 working days.

31) Treasury's basis for this denial was that CEI's request was broad, which breadth led Treasury to conclude that CEI had not demonstrated that disclosure would significantly inform the public about operations or activities of government. As such, Treasury demanded demand for fees of approximately $1,500.00 just for photocopies of electronic mail from the Office of Environment and Energy, although Plaintiff in its requests specifically asked for records in electronic format where available. The 7,300 electronic mails are, by definition and by default, in electronic format.

32) Because of the problematic nature of this demand -- for example, insisting on large fees from a non-profit, for photocopying electronic records requested in electronic format and therefore owed in electronic format, about an issue plainly discussed at

---

[2] This misdating contributed to CEI not correlating receipt of the request by regular mail with the requests dated August 7, 2012, and CEI initially filed suit for failure to respond. CEI dismissed that complaint without prejudice and instead administratively appealed.

length among certain parties but not at all publicly, and after Treasury had waived its ability to seek fees by ignoring Plaintiff's requests well beyond the statutory period for responding -- on October 25, 2012 CEI also appealed this denial.

33) At Treasury's request CEI also narrowed the scope of its request to note "**we do not seek copies of any articles or media coverage already in the public domain; that is not to say we do not seek any commentary on them or emails accompanying them or to which they are/were attached. We also do not seek records whose sole use of 'carbon' is in 'carbon copy' or 'carbon copies.'''** (emphases in original)

34) CEI again noted the significant public interest in the requested information, specifically citing to media reports of discussions about springing a "carbon" tax on the public after the November 2012 elections despite the Department having said nothing at all publicly about it.

35) In its administrative appeal, CEI once more made this clear, noting, *inter alia*,

> the requested documents have an informative value ...[ as] expressions of priorities and aspirations of an administration for a not yet proposed, but increasingly anticipated proposal, for a controversial energy tax. As such it also reflects . . . an agenda that the president stated was designed to cause electricity prices to 'necessarily skyrocket' and 'bankrupt' politically disfavored industrial activity, comments made to the *San Francisco Chronicle* editorial board on video[3] that led to a major legislative and political defeat in 2009, and a presidential acknowledgement that he would find 'other ways to skin the cat',[4] all of which remain among the most publicly discussed of his remarks since his candidacy for the presidency first began... Given the economic and social impact of the policies at issue in our requests, it is important for information relating to discussions about this possible move to quickly impose an energy tax be made available to the public. In our system it is the public who must ultimately be persuaded one way or the other on the policies discussed, and such a decision is only properly made with all appropriately available information. ...By disclosure and dissemination this information will facilitate meaningful public participation in the decision-

---

[3] See remarks at, *e.g.*, http://www.youtube.com/watch?v=sNZPT2NEHQM.

[4] *See, e.g.,* "The Week in Green Energy: The Many Ways to Skin a Cat," *IBD Times,* November 8, 2010, http://www.ibtimes.co.uk/articles/20101108/week-green-energy-many-ways-skincat.htm.

making process... After disclosure of these records, the public's understanding of this unfolding debate, apparently about to be sprung on the taxpayer with relatively little time for deliberation and education, will be significantly enhanced, and they will be better informed if and when the idea is sprung on them or their elected representatives, whatever the administration's ultimate position turns out to be. ... CEI also notes that there is no apparent legislative or regulatory carbon-taxing authority for Treasury; responsive records therefore would address plans for a possible push for congressional enactment. A push would include Treasury's discussion about opposing or, more likely, supporting this new tax when proposed, and coordination with groups inside and outside Congress. Disclosure of the documents requested would serve the public interest by educating the public over what activities Treasury has been conducting regarding the prospect of Congress enacting a controversial new tax including preparations and coordination with advocates of a congressional, executive, and activist-group push for same.

36) Further illustrating the public interest in the requested records, CEI similarly noted in the same document that responsive records would reflect "executive branch discussions of a controversial tax, the proposition of which in the upcoming lame-duck session of Congress is presently being discussed among activists particularly regular policy allies of the current administration[5] -- about which Treasury acknowledges extensive discussion, with not one word publicly uttered..."

37) Defendant also demonstrated the importance of the information and that it would significantly contribute to public understanding of operations or activities of government by asserting in its fee waiver denial that it had identified, in just the Office of Environment and Energy, 7,300 responsive emails in the year 2012.

38) Based on Treasury's own response, therefore, responsive records would by definition significantly inform the public about these operations or activities of government, in that they disclose something extensively discussed among political colleagues,

---

[5] *See, e.g.,* Beltway Confidential, "Conservative think tank AEI hosted secret meeting with liberal groups on carbon taxation", *Washington Examiner*, July 12, 2012, http://washingtonexaminer.com/conservative-think-tank-aei-hosted-secret-meeting-with-liberal-groups-on-carbon-taxation/article/2502017#.UIhmao7mrS8.

outside activists and/or lobbies and congressional offices, yet about which it has said nothing publicly.

39) CEI also separately reminded Treasury, by letter dated and sent by facsimile November 5, 2012, that under the OPEN Government Act of 2007 (or "Openness Promotes Effectiveness in our National Government Act of 2007", P.L. 110-175) which amended FOIA, agencies that do not respond to requests within the statutory time period are precluded from charging search fees (or copying fees for media requesters, who are not subject to search fees).  *See* 5 U.S.C. §§ 552(a)(4)(A)(viii).

40) Treasury's decision to demand fees despite having waived that ability, and these other specifics cited, *supra*, suggest it is using fees as a barrier, to delay or deny production of records that are of greatest public value if disclosed in the near future.

41) Regardless, Treasury did not respond to this administrative appeal.

## LEGAL ARGUMENTS

42) FOIA provides that a requesting party is entitled to a substantive agency response within twenty working days, affirming the agency is processing the request and intends to comply. It must rise to the level of indicating "that the agency is exercising due diligence in responding to the request...Upon any determination by an agency to comply with a request for records, the records shall be made promptly available to such person making such request." 5 U.S.C. § 552(a)(6)(A)(i). *See, e.g.,Shermco Industries v. Secretary of the U.S. Air Force*, 452 F. Supp. 306 (N.D. Tex. 1978).

43) Treasury did not substantively respond to CEI's request as required.

44) The courts have deemed a substantive agency response to mean the agency must begin to process the request. *See, e.g., Oglesby v. U.S. Dep't of Army*, 920 F.2d 57.

Examples include informing a requester that it assigned the request(s) to the simple, normal or complex processing tracks and giving notice that it is reviewing some quantity of records with an eye toward production on some estimated schedule. *See, e.g., Citizens for Responsibility and Ethics in Washington v. Federal Election Commission*, 839 F. Supp. 2d  17, 25 (D.D.C. 2011).

45) Merely stating that an agency received a legible copy of a request does not constitute a response. An agency must demonstrate an intention to process the request. *See, e.g., Oglesby v. Department of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

46) After taking an extension of time to respond, Treasury owed CEI a substantive response to its requests for information by September 20, 2012.

47) Treasury failed to respond to CEI's request, which CEI administratively appealed.

48) After receiving that appeal, thirty nine days after CEI's requests and expressly "in response to [CEI's] Freedom of Information Act (FOIA) requests, dated August 7, 2012," Treasury claimed it had identified responsive records from one office.

49) Treasury provided no responsive records to CEI but demanded costs to photocopy the records. As such, this was *prima facie* arbitrary and capricious as well as being a request which Treasury was barred by law from making just as it would be barred from demanding the requests be resubmitted in audio format or on blue paper.

50) As CEI reminded Treasury, under the OPEN Government Act of 2007 (P.L. 110-175), which amended FOIA, agencies that do not respond to requests within the statutory time period are barred from charging search fees (or copying fees for media requesters, who are not subject to search fees). *Bensman v. Nat'l Park Serv*., 806 F. Supp. 2d 31 (D.D.C. 2011)("To underscore Congress's belief in the importance of the

statutory time limit, the 2007 Amendments declare that '[a]n agency shall not assess

search fees . . . if the agency fails to comply with any time limit' of FOIA. §

552(a)(4)(A)(viii)"); *see also Lawyers Comm. for Civil Rights v. Dep't of the*

*Treasury*, 2009 WL 2905963 (N.D. Cal. Sept. 8, 2009) (Defendant waived right to

object to fee-waiver request where it failed to respond within 20 days of the request.).

51) Treasury is not further processing CEI's requests on the grounds that CEI must first

agree to pay a substantial fee to photocopy several thousand pages of electronic mail,

a demand that is arbitrary and capricious on three grounds: CEI specifically requested

electronic copies of records where available, and that is the default format of

electronic mail; disclosure of responsive records is plainly in the public interest for

reasons stated to Treasury and in this Complaint; and Treasury waived its right to

assess fees by not responding to CEI's request within the statutory time period.

(Moreover, in its FOIA request, CEI had indicated a willingness to pay certain fees if

its fee waiver request was denied, so that document production could proceed in the

interim, and the amount agreed in advance would according to Treasury's own words

appears to be sufficient for all appropriate costs;[6] CEI also further narrowed its

request to limit the costs of production.[7])

---

[6] In rejecting CEI's request for a general fee waiver, Treasury assigned CEI "a fee
category of 'all other requestors,' which entitles" CEI "to 100 pages of duplication and
the first two hours of search for responsive records without charge. *See* 31 C.F.R. §
1.7(a)(4)."  In its letter doing so, Treasury implicitly indicated that there had been no
chargeable search costs under this designation, *i.e.*, that less than two hours of search
time had been necessary to locate the documents that Treasury had identified but refused
to produce.  *See id.* at 2 (basing estimated cost of production for "responsive documents"
entirely on "per page" charges of  photocopying emails, *etc.,* without any search costs).
The 7,300 electronic mails identified as "responsive documents" could be produced at
little cost in electronic form, which would eliminate "duplication" costs (as previously
noted, their identification did not result in chargeable search costs).
[7] *See supra*, paragraph 33.

52) As Treasury was barred from making this demand, it may not use such a demand, well beyond when after the statutory period had expired, after Treasury's ten-day extension, and after it had received CEI's administrative appeal, to reset any statutory time periods. To conclude otherwise would allow agencies to ignore requests, only to demand fees upon confirming the requester was serious enough to pursue its appellate rights and then resetting applicable time periods, making a mockery of the 2007 FOIA amendments and subsequent judicial precedent.

53) Regardless, Treasury failed to respond to CEI's administrative appeal of this demand for fees, and CEI has still exhausted its administrative remedies under all scenarios. Treasury has wrongly denied CEI's requests to have its fees waived or substantially reduced, as "disclosure of the [requested] information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government."

54) Treasury also arbitrarily and capriciously denied that CEI had shown disclosure to be in the public interest (by significantly informing the public about operations or activities of the government), because it deemed CEI's request to be "broad."

55) CEI's requests are not "broad," but rather deal with, if not the only subject, then the principal subject, the Treasury office about which it argues Plaintiff's request is too "broad" deals with. Specifically, the Treasury Department Office of Environment and Energy was created in anticipation of possible legislative enactment of authority to execute a carbon dioxide cap-and-trade program, colloquially known as "carbon cap-and-trade"; after that proposal was defeated through the democratic process, Treasury now actively contemplates administering a "carbon tax." As such, a request for

records using the word "carbon" is not "broad" and it will be the rare exception that requested records dated during 2012 are not discussing a carbon dioxide tax instead of, e.g., the precipitous drop in the use of carbon paper, benefits of carbon fiber in aviation design, or other uses of the word. Instead, most if not all such records using "carbon" certainly discuss the "carbon" tax desired by some in the administration, certain congressional offices and numerous industry and pressure group lobbies.

56) FOIA is designed to "pierce the veil of administrative secrecy and to open agency action to the light of scrutiny." *Department of the Air Force v. Rose*, 425 U.S. 352 (1976). It is a transparency-forcing law, consistent with "the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Id*.

57) The Act requires all doubts to be resolved in favor of disclosure. It is well-settled that Congress, through FOIA, "sought 'to open agency action to the light of public scrutiny.'" *DOJ v. Reporters Comm. for Freedom of Press*, 498 U.S. 749, 772 (1989) (*quoting Dep't of Air Force v. Rose*, 425 U.S. 353, 372 (1976)). The legislative history is replete with reference to the "'general philosophy of full agency disclosure'" that animates the statute. *Rose*, 425 U.S. at 360 (*quoting* S.Rep. No. 813, 89th Cong., 2nd Sess., 3 (1965)).

58) Accordingly, when an agency withholds requested documents the burden of proof is placed squarely on the agency, with all doubts resolved in favor of the requester. *See, e.g., Federal Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 352 (1979). This is true regardless of whether the agency is claiming an Exemption under FOIA in whole or in part. *See, e.g., Tax Analysts*, 492 U.S. at 142 n. 3; *Consumer Fed'n of America v. Dep't of Agriculture*, 455 F.3d 283, 287 (D.C. Cir. 2006); *Burka*, 87 F.3d at 515.

59) Thus, Treasury must now provide CEI records responsive to its requests.

## <u>Treasury Owes CEI a Waiver of its Fees</u>

60) FOIA is aimed in large part at promoting active oversight roles of watchdog public advocacy groups. *See Better Gov't Ass'n v. Department of State*, 780 F.2d 86, 88-89 (D.C. Cir. 1986)(fee waiver intended to benefit public interest watchdogs).

61) As a non-commercial requester, CEI is entitled to liberal construction of the fee waiver standards and satisfying FOIA's fee waiver considering whether disclosure would inform the public. 5 U.S.C.S. § 552(a)(4)(A)(iii), *Perkins v. U.S. Department of Veterans Affairs*, 754 F. Supp. 2d 1 (D.D.C. Nov. 30, 2010).

62) The legislative history suggests that all fees should be waived whenever a requester is seeking information on a subject relating to the manner in which a government agency is carrying out its operations or the manner in which an agency program affects the public. The requested information also meets this description.

63) "The legislative history of the fee waiver provision reveals that it was added to FOIA 'in an attempt to prevent government agencies from using high fees to discourage certain types of requesters, and requests,' in particular those from journalists, scholars and nonprofit public interest groups." *Better Gov't Ass'n*, 780 F.2d 86, 88-89 (D.C. Cir. 1986), *citing Ettlinger v. FBI*, 596 F. Supp. 867, 872 (D.Mass. 1984); Senate Jud. Comm., *Amending the FOIA*, S. Rep. 854, 93rd Cong., 2d Sess. 11-12 (1974)).

64) This was grounded in the recognition that the two plaintiffs in that case were, like Plaintiff in the instant matter, public interest non-profit groups, which "rely heavily and frequently on FOIA and its fee waiver provision to conduct the investigations that are essential to the performance of certain of their primary institutional activities --

publicizing governmental choices and highlighting possible abuses that otherwise might go undisputed and thus unchallenged.  These investigations are the necessary prerequisites to the fundamental publicizing and mobilizing functions of these organizations.  Access to information through FOIA is vital to their organizational missions." *Better Gov't Ass'n*, 780 F.2d at 93.

65) They therefore, like CEI, "routinely make FOIA requests that potentially would not be made absent a fee waiver provision", requiring the court to consider the "Congressional determination that such constraints should not impede the access to information for appellants such as these." *Id*.

66) "Congress explicitly recognized the importance and the difficulty of access to governmental documents for such typically under-funded organizations and individuals when it enacted the 'public benefit' test for FOIA fee waivers. This waiver provision was added to FOIA 'in an attempt to prevent government agencies from using high fees to discourage certain types of requesters and requests,' in a clear reference to requests from journalists, scholars and, most importantly for our purposes, nonprofit public interest groups. Congress made clear its intent that fees should not be utilized to discourage requests or to place obstacles in the way of such disclosure, forbidding the use of fees as '"toll gates" on the public access road to information.'" *See Better Gov't Ass'n*, 780 F. 2d at 94 (citations omitted).

67)  "[I]nsofar as ...[agency] guidelines and standards in question act to discourage FOIA requests and to impede access to information for precisely those groups Congress intended to aid by the fee waiver provision, they inflict a continuing hardship on the non-profit public interest groups who depend on FOIA to supply their lifeblood --

information." *Id.* at 94 (internal citations omitted).  It therefore will not permit such application of FOIA requirements that "'chill' the ability and willingness of" such groups "to engage in activity . . . that Congress explicitly wished to encourage." *Id.*

68) Congress also enacted FOIA clearly intending that "fees should not be used for the purpose of discouraging requests for information or as obstacles to disclosure of requested information." *See Ettlinger v. FBI*, 596 F.Supp. 867, 872 (D.Mass 1984), *citing* Conf. Comm. Rep., H.R. Rep.  No. 1380, 93d Cong., 2d Sess. 8 (1974) at 8.

69) Congress saw that agencies were being too restrictive in granting fee waivers and so called for the Department of Justice to issue Guidelines in response. *See Ettlinger v. FBI,* 596 F.Supp. 867, 872 (D.Mass 1984), *citing* Subcommittee on Administrative Practice and Procedure of the Senate Judiciary Committee, *Agency Implementation of the 1974 Amendments to the Freedom of Information Act: Report on Oversight Hearings*, 95th Cong., 2d Sess. 78 (Committee Print 1980), at 90-95.

70) The language of the FOIA makes clear that Congress intended that the assessment of fees not be a bar to private individuals or public interest groups seeking access to government documents. FOIA specifically and the legislative history of the relevant FOIA provision calls for a liberal interpretation of the fee waiver standard. *See McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284-1286 (9th. Cir. 1987) ("A requester is likely to contribute significantly to public understanding 'if the information disclosed is new; supports public oversight of agency operations; or otherwise confirms or clarifies data on past or present operations of the government'"), *quoting* 132 Cong. Rec. H9464 (Reps. English and Kindness)).

71) The information requested in request numbers 2012-08-053 and 2012-08-054 meets that description, for reasons both obvious and specified to Defendant and herein.

72) Defendant Treasury instead improperly applied the statute to claim that the public would not benefit substantially from disclosure of the requested information, and wrongly assert that Plaintiff did not make a sufficient showing that it would.

73) The release of this information would benefit the public because for the first time the public would see internal discussions with others inside government and without, over the prospect of a carbon tax or other effort to regulate carbon dioxide, about which there is increasing public and media interest, all of which discussion has occurred out of the public's sight.

74) Treasury offers no evidence to rebut this reality, inherent and explained in Plaintiff's request, that disclosure of the requested information would contribute significantly to public understanding of the operations or activities of the government when there is no other means of obtaining the information requested: discussions about a new, controversial energy tax apparently about to be sprung on the public which is the subject of intense deliberations outside of public view yet about which the administration has said nothing publicly.

75) Finally, since this request is for material which is clearly of benefit to the public, other persons will undoubtedly also request these records. It would be inequitable if the first requester were to bear the full material cost of the initial search.

### FIRST CLAIM FOR RELIEF
**Release of Certain Records using the Word "Carbon", Request Nos. 2012-08-053 and 2012-08-054 -- Declaratory Judgment**

76) Plaintiff re-alleges paragraphs 1-75 as if fully set out herein.

77) Plaintiff has sought and been denied production of responsive records reflecting the conduct of official business.

78) Plaintiff has a statutory right to the information it seeks.

79) Defendant failed to provide Plaintiff responsive records.

80) Plaintiff has exhausted its administrative remedies.

81) Plaintiff asks this Court to enter a judgment declaring that:

    i.   Documents in Treasury's possession using the word "carbon" as described in request numbers 2012-08-053 and 2012-08-054 are agency records under FOIA;

    ii. Treasury's response to Plaintiff's FOIA Request seeking the described records is not reasonable, and does not satisfy Treasury's FOIA obligations;

    iii.  Treasury's refusal to produce the requested records is unlawful; and

    iv.  Treasury must produce those requested records within ten days of the order.

## SECOND CLAIM FOR RELIEF
### Release of Certain Records using the Word "Carbon", Request Nos. 2012-08-053 and 2012-08-054 -- Injunctive Relief

82) Plaintiff re-alleges paragraphs 1-81 as if fully set out herein.

83) CEI is entitled to injunctive relief compelling Treasury to produce all records in its possession responsive to CEI's request Nos. 2012-08-053 and 2012-08-054.

84) We ask this Court to enter an injunction pursuant to 5 U.S.C. § 552(a)(4)(B) a enjoining Treasury from further withholding responsive records and ordering the Treasury to produce to CEI, within 10 business days of the date of the order, the described, requested records or a detailed *Vaughn* index claiming FOIA exemptions applicable to withheld information.

## THIRD CLAIM FOR RELIEF
### Fee Waivers for Certain Described Records -- Declaratory Judgment

85) Plaintiff re-alleges paragraphs 1-84 as if fully set out herein.

86) FOIA provides for fee waiver or reduction when "disclosure of the [requested] information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government."

87) CEI sought and was constructively denied a waiver or reduction of its fees for two requests under the Freedom of Information Act seeking records whose disclosure will significantly inform the public about operations or activities of government.

88) Defendant demanded fees expressly in response to Plaintiff's original request which Defendant had ignored for 39 working days and after Plaintiff had initiated the administrative appeal process.

89) FOIA bars agencies which failed to respond to a request from then extracting fees.

90) Treasury also demands fees where they are *prima facie* impermissible (for, e.g., photocopying electronic records requested in electronic format).

91) CEI has a statutory right to have its fees waived or substantially reduced.

92) Treasury constructively denied CEI's request for waiver or substantial reduction of its fees, waving its ability to seek fees by ignoring Plaintiff's original request.

93) CEI also administratively appealed that denial and informed Treasury of the bar to agencies that have ignored requests from demanding fees.

94) Treasury elected to not respond to this administrative appeal.

95) CEI has exhausted its administrative remedies.

96) Plaintiff asks this Court to enter a judgment declaring that:

    i.   Disclosure of Treasury records as described in Plaintiff's request numbers 2012-08-053 and 2012-08-054 is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government;

    ii.  Treasury's refusal to grant Plaintiff's requests for fee waiver is unlawful;

iv. Treasury's denial of Plaintiff's fee waiver requests is not reasonable, and does not satisfy Treasury's obligations under FOIA;

v. Treasury waived its ability to assess fees by failing to substantively respond to Plaintiff's requests in the statutory time period; and

vi. Treasury is barred from seeking, or otherwise must grant Plaintiff's requests for waiver of cost associated with producing the requested records.

## FOURTH CLAIM FOR RELIEF
**Requests for Fee Waivers for Certain Described Records -- Injunctive Relief**

97) Plaintiff re-alleges paragraphs 1-96 as if fully set out herein.

98) CEI is entitled to injunctive relief compelling Treasury to grant Plaintiff's requests to have its fees waived or substantially reduced, or otherwise affirming that Treasury may not assess fees for costs associated with producing the requested records.

99) We ask this Court to enter an injunction ordering Treasury to grant CEI's requests to have its fees waived or substantially reduced within 10 days of the date of the order.

## FIFTH CLAIM FOR RELIEF
**Costs And Fees – Injunctive Relief**

100) Plaintiff re-alleges paragraphs 1-99 as if fully set out herein.

101) Pursuant to 5 U.S.C. § 552(a)(4)(E), the Court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

102) This Court should enter an injunction ordering the Defendant to pay reasonable attorney fees and other litigation costs reasonably incurred in this case.

103) Plaintiff has a statutory right to the records that it seeks, Defendant has not fulfilled its statutory obligations to provide the records or a substantive response, and there is no legal basis for withholding the records.

WHEREFORE, Plaintiff requests the declaratory and injunctive relief herein sought, and an award for their attorney fees and costs and such other and further relief as the Court shall deem proper.

Respectfully submitted this 27th day of November, 2012,

Hans Bader
D.C. Bar No. 466545

Christopher C. Horner
D.C. Bar No. 440107

Sam Kazman
D.C. Bar No. 946376

1899 L St., N.W., 12th Floor
Washington, D.C. 20036
(202) 331-1010
November 27, 2012                          Attorneys for Plaintiff