# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COMPETITIVE ENTERPRISE INSTITUTE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES DEPARTMENT OF THE TREASURY, ) <br> ) <br> Defendant. ) | Civil Case No. 12-1838-RMC |

## MEMORANDUM OPINION

The Competitive Enterprise Institute, a public policy research and education organization, filed two identical Freedom of Information Act requests with the United States Department of the Treasury seeking all "copies of any and all record(s) . . . using the word 'carbon' which were produced, sent or received by the Office of the Deputy [sic] Sercretary for Environent and Energy [and the Office of Legislative Affairs] during 2012, from January 1, 2012 until the date you process this request." Abigail Demopulos Decl. [Dkt. 30-3] ¶ 3. Dissatisfied with Treasury's response, CEI has sued. Treasury moves for summary judgment, which CEI opposes. For the reasons stated below, the Court will grant Treasury's motion in part and deny it in part. For a subset of records, Treasury will be required to produce further information concerning the "deliberative" nature of the proceedings for which it claims an exemption.

## I. BACKGROUND

On August 8, 2012, CEI sent two materially similar FOIA requests to two constituent components of Treasury: (1) the Office of the Deputy Assistant Secretary for Environment and Energy (Environment and Energy); and (2) the Office of Legislative Affairs

(Legislative Affairs). Am. Compl. [Dkt. 8] ¶¶ 23, 24. These requests sought any and all records "using the word 'carbon'" produced, sent, or received between the offices during the calendar year 2012 up until the date the FOIA requests were processed. *Id.* After negotiations, the parties agreed to limit CEI's search request to the following terms: "carbon tax"; "carbon levy"; "carbon fee"; "carbon charge"; "carbon cap"; "price on carbon"; and "tax on carbon." Joint Status Report [Dkt. 15].

Using those search terms, Treasury electronically searched the hard drives, email accounts, and shared drives of all employees in Environment and Energy. *See* Demopulos Decl. [Dkt. 30-3] ¶ 7. This search located 4,163 pages of responsive records. *Id.* Treasury also searched the hard drives, email accounts, and shared drives of employees in Legislative Affairs whose assigned responsibilities, as Treasury determined, made it likely the employee might have responsive records. Gail Harris-Berry Decl. [Dkt. 30-4] ¶ 6. Treasury manually searched a number of PDF files whose format made electronic searching impossible. The combined searches in Legislative Affairs returned no unique, non-duplicative records when compared to the 4,163 located in Environment and Energy. *Id.* ¶ 7. Of the 4,163 responsive pages, 2,464 pages were released, in whole or in part. Treasury withheld 1,699 pages in their entirety.

CEI filed its initial Complaint in this case on November 13, 2012, and filed an Amended Complaint November 27, 2012. After negotiations over search terms, searches, and production, Treasury moved for summary judgment on November 2, 2015. In a Minute Order dated July 1, 2015, the Court denied Treasury's initial motion for summary judgment and ordered Treasury to prepare a more detailed *Vaughn* Index. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). Treasury has now filed a Renewed Motion for Summary Judgment [Dkt. 30]

2

that includes a revised *Vaughn* Index. CEI opposes Treasury's Motion, *see* Opp'n [Dkt. 31], and

Treasury has replied, *see* Reply [Dkt. 33]. The matter is now ripe for the Court's review.

## II. VENUE AND JURISDICTION

Section 552(a)(4)(B) of the U.S. Code grants this Court subject matter jurisdiction

over all actions brought under FOIA, and makes this an appropriate forum for venue purposes. 5

U.S.C. § 552(a)(4)(B) ("On complaint, the district court of the United States in the district in

which the complainant resides, or has his principal place of business, or in which the agency

records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from

withholding agency records and to order the production of any agency records improperly

withheld from the complainant."); *see Jones v. Nuclear Regulatory Comm'n*, 654 F. Supp. 130,

131 (D.D.C. 1987).

The Court's jurisdiction under FOIA extends only to claims arising from the

improper withholding of agency records. *See* 5 U.S.C. § 552(a)(4)(B); *see also Lazaridis v. U.S.*

*Dep't of Justice*, 713 F. Supp. 2d 64, 66 (D.D.C. 2010) (citing *McGehee v. CIA*, 697 F.2d 1095,

1105 (D.C. Cir. 1983)).

## III. LEGAL STANDARDS

FOIA "represents a balance struck by Congress between the public's right to

know and the government's legitimate interest in keeping certain information confidential." *Ctr.*

*for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003). Under FOIA,

federal agencies must release records to the public upon request, unless one of nine statutory

exemptions apply. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975); 5 U.S.C.

§ 552(b). To prevail in a FOIA case, a plaintiff must show that an agency has improperly

withheld agency records. *See Odland v. FERC*, 34 F. Supp. 3d 1, 13 (D.D.C. 2014). The

defending agency must demonstrate that its search for responsive records was adequate, that any cited exemptions actually apply, and that any reasonably segregable non-exempt information has been disclosed after redaction of exempt information. *See id.*

FOIA cases are typically and appropriately decided on summary judgment. *See Sanders v. Obama*, 729 F. Supp. 2d 148, 154 (D.D.C. 2010). Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The party moving for summary judgment "bears the initial responsibility . . . [to] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, a court must draw all justifiable inferences in favor of the nonmoving party and accept the nonmoving party's evidence as true. *See Anderson*, 477 U.S. at 255. The nonmoving party, however, must provide more than a "mere existence of a scintilla of evidence . . . . [T]here must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252.

## IV. ANALYSIS

CEI challenges the adequacy of Treasury's search, as well as Treasury's designation of some records as exempt under Exemption 5, which protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5).

**A. Adequacy of the Search**

The adequacy of an agency search is measured by its reasonableness, which quite naturally depends on the individual circumstances of each case. *See Sanders*, 729 F. Supp. 2d at 154 (quoting *Truitt v. U.S. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). Under FOIA, any "requester dissatisfied with the agency's response . . . may challenge the adequacy of the agency's search by filing a lawsuit in the district court after exhausting any administrative remedies." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999); *see also* 5 U.S.C. § 552(a)(4)(B). The agency then bears the burden of demonstrating "beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995).

An agency may show that its search was reasonable, such that summary judgment in its favor is warranted, through an affidavit by a responsible agency official, "so long as the declaration is reasonably detailed and not controverted by contrary evidence or evidence of bad faith." *Sanders*, 729 F. Supp. 2d at 155. Accordingly, affidavits that include "search methods, locations of specific files searched, descriptions of searches of all files likely to contain responsive documents, and names of agency personnel conducting the search are considered sufficient." *Citizens for Responsibility & Ethics v. Nat'l Archives & Records Admin.*, 583 F. Supp. 2d 146, 168 (D.D.C. 2008) (quoting *Ferranti v. BATF*, 177 F. Supp. 2d 41, 47 (D.D.C. 2001)).

CEI complains that Treasury found no non-duplicative responsive records in its search in Legislative Affairs. *See* Opp'n at 36-42. In its view, the fact that Treasury initially stated that it had found "no responsive records" and then said that it found "no non-duplicative

responsive records" is evidence of bad faith. *Id.* at 39. CEI further argues that it is unrealistic that Legislative Affairs would hold no unique responsive records. *Id.* at 41.

CEI fails to present evidence sufficient to establish bad faith on the part of the agency. The operative question is not whether further records could conceivably exist, or whether other possible search avenues were available, but whether Treasury's searches were "reasonably calculated to uncover all relevant documents." *Nation Magazine*, 71 F.3d at 890. CEI identifies no evidence that suggests that any records were intentionally withheld, that the files of likely record custodians were not searched, or that any responsive records held by Legislative Affairs were not duplicative of those found at Environment and Energy. CEI's argument is fundamentally speculative. *See Mobley v. CIA*, 806 F.3d 568, 581 (D.C. Cir. 2015) ("Agency affidavits—so long as they are 'relatively detailed and non-conclusory'—are 'accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.'" (quoting *SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). Based on the declarations submitted by Treasury, the Court concludes that Treasury's searches were adequate.

## B. Reliance on Exemption 5

While Treasury withheld some records, in whole or in part, based on FOIA Exemptions 1, 5, and 6. CEI challenges only the reliance on Exemption 5. *See* Joint Mot. to Modify Briefing Schedule [Dkt. 22] at 2; Opp'n at 3. Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). Described as "the deliberative process privilege," Exemption 5 "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery . . . ." *U.S. Dep't of*

*Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001). "[I]ts object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Id.* (internal quotations and citation omitted).

Not all internal agency records—such as those that merely restate existing policy—are covered by FOIA Exemption 5. *See Pub. Citizen, Inc. v. OMB*, 598 F.3d 865, 876 (D.C. Cir. 2010). When considering whether a record is appropriately withheld under Exemption 5, the Court looks to whether "the document is 'predecisional,' [i.e.,] whether it was generated before the adoption of an agency policy[,] and whether it is 'deliberative,' [ i.e.,] whether it reflects the give-and-take of the consultative process." *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 1565, 1569 (D.C. Cir. 1987). "To establish that a document is predecisional, the agency need not point to an agency final decision, but merely establish what deliberative process is involved, and the role that the documents at issue played in that process." *Judicial Watch, Inc., v. Export-Import Bank*, 108 F. Supp. 2d 19, 35 (D.D.C. 2000). The agency is in the best position "to know what confidentiality is needed to 'prevent injury to the quality of agency decisions.'" *Chemical Mfgrs Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (quoting *NLRB v. Sears*, 421 U.S. at 151). Therefore, "[t]here should be considerable deference to the [agency's] judgment as to what constitutes . . . 'part of the agency give-and-take—of the deliberative process—by which the decision itself is made." *Id.* (quoting *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1989)).

Treasury describes "five categories of documents" that it withheld as subject to Exemption 5. These categories are: (1) multiple drafts of a proposed list of Environment and Energy priority projects for 2012; (2) drafts of proposed policy initiatives and internal emails discussing such draft proposals; (3) email correspondence among its staff commenting and

providing recommendations on how a public document might play a role in the agency's future policy initiatives; (4) proposed talking points, planned policy actions, or issues of possible discussion regarding a conference or public meeting; and (5) staff comments on how past policy proposals may inform plans for future policy initiatives.  Reply at 6-7.

CEI challenges multiple aspects of Treasury's reliance on Exemption 5.  Its complaints fall into two broad categories, namely:  (1) Treasury claims Exemption 5 concerning subjects for which it is not entitled to claim that exemption; and (2) Treasury fails its burden of production because the justifications found on its *Vaughn* Index are missing names, explanations, or other vital information.

CEI's first objection comes in two logical subparts:  (1) Treasury has no statutory authority to regulate carbon and, therefore, (2) Treasury cannot on cite Exemption 5 at all for records dealing with carbon taxes.  Opp'n at 20.  In support, CEI points to *Weissman v. CIA*, which held that the CIA, which is statutorily prohibited from engaging in domestic law enforcement, could not invoke FOIA Exemption 7, which exempts records on law enforcement grounds.  565 F.2d 692, 696 (D.C. Cir. 1977).[1]  CEI argues that Treasury simply has no authority to impose any carbon tax, and has disavowed any intention to do so, and therefore cannot assert a deliberative process privilege relating to a carbon tax.  Opp'n at 20.

This argument, and *Weissman*, are inapposite to this case.  Even if *Weissman*'s reasoning applied beyond FOIA Exemption 7—and several courts have declined to expand it,

---

[1] CEI also cites *Tax Reform Research Group v. IRS*, 419 F. Supp. 415, 426 (D.D.C. 1976), which holds that agencies may not use the deliberative process to exempt records where the agency engaged in significant misconduct.  This "misconduct exemption" applies only "in circumstances of extreme government wrongdoing."  *ICM Registry, LLC v. U.S. Dep't of Commerce*, 538 F. Supp. 2d 130, 134 (D.D.C. 2008).  CEI alleges no misconduct on Treasury's part that would rise to the "nefarious" level necessary to trigger the misconduct exemption, and the exception does not apply here.  *Id.*

*see, e.g., ACLU v. CIA*, 892 F. Supp. 2d 234, 244 (D.D.C. 2012)—*Weissman* concerned an explicit congressional limitation on agency authority. Treasury's authority *vel non* to impose a carbon tax is not nearly as clear. Agency deliberations may be necessary to determine whether it has authority to promulgate a particular tax or policy. Even if CEI correctly describes Treasury's authority, the need for staff to speak candidly and confidentially is perhaps most important when the discussion concerns unmapped and unexplored terrain at the border of agency authority. The Court cannot conclude, based on CEI's submissions, that Treasury is categorically unable to assert Exemption 5 for records that discuss a carbon tax.

The remaining issues concern CEI's objections to the adequacy of Treasury's *Vaughn* Index. *See Vaughn*, 484 F.2d at 826. The purpose of a *Vaughn* Index is "to enable the court and the opposing party to understand the withheld information in order to address the merits of the claimed exemptions." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 150 (D.C. Cir. 2006). A *Vaughn* Index is adequate to the task if it allows the Court to "fulfill its duty of ruling on the applicability of the exemption, and [to] enable[ ] the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court." *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 349 (D.C. Cir. 1987). Agencies supplement their *Vaughn* Index with supporting affidavits, which are entitled to a presumption of good faith. *See SafeCard Servs.*, 926 F.2d at 1200 ("Agency affidavits are accorded a presumption of good faith."). The question, then, is not whether an agency's *Vaughn* Index is flawless, but rather whether the agency has "supplied the [Court] with sufficient information to allow [it] to make a reasoned determination that [the agency was] correct." *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 861 (D.C. Cir. 1980).

With that framework in mind, the Court turns to CEI's objections. CEI objects that Treasury "fails to list all senders and recipients of withheld documents, rendering its withholdings facially inadequate." Opp'n at 2. Similarly, CEI objects to certain withheld records on the grounds that Treasury has not established that such records are actually "intra" or "inter-agency" records. Because Treasury has not identified all senders and recipients, CEI argues, it is impossible to determine whether some of these records actually reflect the kind of "internal deliberations" Exemption 5 is meant to exempt.

Such omissions are not as problematic as CEI contends. Treasury has submitted supporting affidavits that attest to the fact that such communications were intra- or inter-agency. *See* Demopulos Decl. ¶ 11 ("In all cases, exemption (b)(5) was applied solely to intra-agency or intra-governmental communications; none of these communications [was] with third parties outside of the federal government."). These declarations are entitled to a presumption of good faith and CEI has not given any reason to question that presumption here.

CEI next complains that Treasury based its claims of deliberative process privilege on "vague, boilerplate" language, and "unjustifiably withholds documents without tying them to policy at all." Opp'n at 9, 26. CEI's arguments here raise some greater concerns. Treasury is correct in asserting that an agency need not "identify a specific decision in connection with which a memorandum is prepared." *NLRB v. Sears*, 421 U.S. at 151 n.18. However, that exception simply acknowledges the reality that not every deliberative agency action will result in a definable agency decision, nor will every agency employee know ahead of time which of his statements will result in a decision. *See Access Reports v. U.S. Dep't of Justice*, 926 F.2d 1192, 1196 (D.C. Cir. 1991) ("Any requirement of a specific decision after the creation of the document would defeat the purpose of the exemption. At the time of writing the

author could not know whether the decisionmaking process would lead to a clear decision, establishing the privilege, or fizzle, defeating it."). The fact that information may be exempt from FOIA disclosure under Exemption 5 even if no specific "decision" resulted does not mean that an agency is entitled to withhold otherwise non-exempt information to identify a specific decision or policy determination that is known.

However, for the most part Treasury's *Vaughn* Index provides sufficient information to allow the Court to find that it properly claimed applicability of Exemption 5. For example, Treasury withheld a large number of "draft memorand[a] consist[ing] of [a] policy proposal that was prepared at staff level and was never finalized," as well as email discussions of those drafts. *See Vaughn* Index [Dkt. 29-1] at 1. This description makes clear that agency staff were sharing their individual views concerning a predecisional agency action in a deliberative process. The Court can determine that the records are appropriately withheld under Exemption 5 without further information about the particular policy proposal at issue. *See Exxon Corp. v. U.S. Dep't of Energy*, 585 F. Supp. 690, 698 (D.D.C. 1983) ("Draft documents, by their very nature, are typically predecisional and deliberative."). The large majority of entries in the *Vaughn* Index likewise provide a similarly sufficient level of detail.

The exceptions are the records CEI identifies in Parts IV and V of its Opposition as, respectively, records lacking any nexus to policymaking and "media-related withholdings." Opp'n at 26, 32.[2] Records that take the form of draft policy memoranda or draft office priorities can be reliably grounded in a predecisional and deliberative process without further inquiry. *See Exxon Corp.*, 585 F. Supp. at 698. However, a number of records withheld by Treasury are

---

[2] These records are, collectively: 1; 7; 61-63; 72; 74; 78; 101-103; 161; 162; 186; 189; 231; 248; 254-256; 261; 268-270; 278; 281-282.

described as staff commentary on news articles, public comments by non-agency officials, and other media originating outside the Department. The lack of substantive detail in the *Vaughn* Index prevents the Court from assessing what "deliberative process" was taking place. Not every discussion by agency staff that touches on agency matters is protected by Exemption 5; if that were the case, Exemption 5 could conceivably cover almost any internal agency communication. *See Judicial Watch v. Reno*, 154 F. Supp. 2d 17, 18 (D.D.C. 2001) ("It is not enough to say that a memorandum 'expresses the author's views' on a matter. The role played by the document in the course of the deliberative process must also be established."). Further, statements that merely restate existing policies or neutral facts are not exempt under Exemption 5. *See Public Citizen v. OMB*, 598 F.3d at 367. ("A document that does nothing more than explain an existing policy cannot be considered deliberative.").

Treasury will be ordered to supplement its *Vaughn* Index with more detailed information concerning the deliberative process for these records. Treasury may petition to submit this information *in camera* if such supplementation would necessarily disclose the information the agency seeks to protect.

## V. SEGREGABILITY

Finally, CEI challenges Treasury's withholding of 87 records in their entirety rather than releasing them in redacted form. Opp'n at 18. While an agency may properly withhold records or parts of records under FOIA exemptions, it must release "any reasonably segregable portions" of responsive records that do not contain exempted information. *Schoenman v. FBI*, 575 F. Supp. 2d 136, 155 (D.D.C. 2008); *see also* 5 U.S.C. § 552(b). An agency bears the burden of demonstrating that all reasonably segregable portions of a record have been disclosed, and may do so by "offering an affidavit with reasonably detailed

descriptions of the withheld portions of the documents and alleging facts sufficient to establish an exemption." *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008).

Treasury has submitted a declaration asserting that it has released "all reasonably segregable non-exempt information." Demopulos Decl. ¶ 14. It states that "[a]ll information withheld either was exempt from disclosure pursuant to a FOIA exemption or was so intertwined with protected material that segregation was not possible without revealing the underlying protected material." *Id.* Agency declarations are entitled to a presumption of good faith with regards to segregability. *See ACLU v. CIA*, 892 F. Supp. 2d at 250. Treasury states that "the majority of the remaining [unredacted] documents are 'draft memoranda' of policy proposals or e-mail correspondence discussing the drafts." Reply at 17.

The Court agrees with Treasury that "'[d]raft documents, by their very nature, are typically pre-decisional and deliberative.'" *Id.* (quoting *Exxon Corp.*, 585 F. Supp. at 697-98). However, the D.C. Circuit has held that an agency may not "avail itself of Exemption 5 to shield existing policy from disclosure simply by describing the policy in a document that as a whole is predecisional, such as a memo written in contemplation of a change in that very policy." *Public Citizen v. OMB*, 598 F.3d at 367. In such a situation, "[o]nly those portions of a predecisional document that reflect the give and take of the deliberative process may be withheld." *Id*.

Treasury's declarations do not indicate whether it reviewed the withheld draft memoranda to ensure that no existing policy information or neutral facts were contained therein that could be released under the test of *Public Citizen*. Treasury will be ordered to provide more detail concerning its efforts to ensure that no such information could be released in redacted form without revealing protected material. The Court is satisfied that Treasury has met its burden that

13

the remaining fully-withheld correspondence, such as internal emails, contain no reasonably-segregable information.[3]

## VI. CONCLUSION

For the reasons above, Treasury's Motion for Summary Judgment will be granted in part and denied in part. Treasury will be ordered to supplement its *Vaughn* Index with more detailed information for records 1; 7; 61-63; 72; 74; 78; 101-103; 161; 162; 186; 189; 231; 248; 254-256; 261; 268-270; 278; 281-282 and will be ordered to provide the Court with further information regarding its segregability analysis for records 10; 19; 22-25; 30; 38-41; 45; 48-49; 52; 66; 69-70; 80; 84-85; 90; 95; 97; 100; 106; 108; 120-21; 133; 158; 159; 161-64; 168-69; 171; 179; 180; 218; 248; 254; 255; 264; 265; 279; 293.

Date: April 2, 2018 _____/s/_____
ROSEMARY M. COLLYER
United States District Judge

---

[3] Based on Treasury's *Vaughn* Index, the records containing draft policy materials not subject to release are the following: 10; 19; 22-25; 30; 38-41; 45; 48-49; 52; 66; 69-70; 80; 84-85; 90; 95; 97; 100; 106; 108; 120-21; 133; 158; 159; 161-64; 168-69; 171; 179; 180; 218; 248; 254; 255; 264; 265; 279; 293.